Filed 12/20/22  P. v. Young CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EUGENE YOUNG,<br><br>Defendant and Appellant. | B314529<br><br>Los Angeles County<br>Super. Ct. No. TA034176 |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Shultz, Judge.  Affirmed.

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Eugene Young appeals from the superior court's order denying his petition for resentencing under Penal Code section 1172.6.[1]  We affirm because the record of conviction establishes Young is ineligible for resentencing as a matter of law.

## BACKGROUND

On September 9, 1987, Thomas Lawson and Kathie Hodges were robbed at gunpoint in their apartment in South Central Los Angeles.[2]  In 1988 Young was convicted of that robbery and placed on probation.  At some point Hodges told authorities there was a rumor during the robbery trial that Young "was threatening to get even" with Lawson and Hodges for testifying against him.

On January 6, 1989, around 9:30 p.m., Lawson, with Hodges as his passenger, pulled his van into his parking space behind his residence.  Hodges was reaching into the back of the van to get some packages as Lawson was getting out of the driver's side.  Hodges heard a male voice say, " 'Pop.' "  Two or three gunshots followed.  Lawson collapsed to the ground.  Hodges saw an African American man, about five feet, four inches tall, running away.[3]  He put an object inside his waistband as he ran.

---

[1]  References to statutes are to the Penal Code.  Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

[2]  We take our facts from a July 1995 police report Young attached to his petition in the superior court in support of his request for relief.

[3]  Young is five feet, nine inches tall.

A witness walking by around that time told police he had seen three African American men walking down the street. Fifteen to 20 seconds later the witness heard a loud gunshot. He saw the same three men running from the scene. One of the men ran right past the witness, passing within two feet of him. The man got into an Oldsmobile and drove off. The witness wrote down the license number. The witness later chose Young's photograph out of a photo lineup as the man who had passed right by him. In May 1989 police arrested Young, together with two other men, in Barstow. In the meantime, on January 28, 1989, Lawson died from his gunshot wounds.

The People charged Young with Lawson's murder. The People alleged Young had personally used a firearm in the commission of the crime and that he had a prior strike for robbery. The case went to trial in 1996. The trial court instructed the jury with (among other instructions) instructions on Principals (CALJIC No. 3.00), Aiding and Abetting—Defined (CALJIC No. 3.01), Murder—Defined (CALJIC No. 8.10), Malice Aforethought—Defined (CALJIC No. 8.11), Deliberate and Premeditated Murder (CALJIC No. 8.20), Unpremeditated Murder of the Second Degree (CALJIC No. 8.30), Duty of Jury as to Degree of Murder (CALJIC No. 8.70), and Doubt Whether First or Second Degree Murder (CALJIC No. 8.71). The court did not instruct the jury on the natural and probable consequences doctrine or on felony murder.

On April 8, 1996, the jury found Young guilty of first degree murder. The jury found not true the allegation that Young personally used a firearm in the commission of the offense. The trial court sentenced Young to 30 years to life, consisting of 25 to life for the murder plus five years for the serious felony (robbery)

3

prior.  A different panel of this court affirmed Young's conviction. (*People v. Young* (Sept. 8, 1997, B104211) [nonpub. opn.].)

On June 3, 2021, Young, represented by counsel, filed a petition for resentencing under section 1172.6.  The petition, signed by counsel, stated (1) an information had been filed against Young "that allowed the prosecution to proceed under a theory of the natural and probable consequences doctrine"; (2) Young was convicted of first degree murder following a trial; and (3) Young could not be convicted of murder "because of changes to Section 188 or 189."  Young attached as exhibits copies of the information, the July 1995 police report, and the docket in his case.  Young also attached a declaration stating an information had been filed against him "allowing the prosecution . . . to proceed under a theory of natural and probable consequences"; he "could not now be convicted of 1st degree murder because of changes made to Penal Code §§ 188 and 189"; and he "could not now be convicted because of changes to § 189 . . . because [he] was not the actual killer; [he] did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; [and he] was not a major participant nor did [he] act with reckless indifference to human life during the course of the crime."

On June 22, 2021, the trial court issued an order summarily denying Young's petition.  The court stated, "The petition for recall and resentencing pursuant to Penal Code section [1172.6] is denied because the petitioner is not entitled to relief as a matter of law, for the following reason: [¶] Penal Code section [1172.6] allows relief when a person was convicted of murder based upon a theory of felony murder or convicted

4

of murder under a natural and probable consequences theory. [Citation.] Here, the jury was neither instructed regarding natural and probable consequences, nor instructed pursuant to a theory of felony-murder. Therefore, petitioner is statutorily ineligible for relief pursuant to Penal Code section [1172.6]."

Young appealed and we appointed counsel to represent him on appeal. After examining the record, counsel filed an opening brief raising no issues and asking this court independently to review the record under *People v. Wende* (1979) 25 Cal.3d 436. Counsel stated she had advised Young that he could file a supplemental brief within 30 days. On July 18, 2022, we sent Young a letter telling him the same thing. On August 11, 2022, Young submitted a form request for an extension of time to file a supplemental brief. We granted the request and extended time to September 19, 2022. We never received any supplemental brief from Young.

## DISCUSSION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure a person's sentence is commensurate with his individual criminal culpability. (*People* v. *Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).) Section 188, subdivision (a)(3), added by Senate Bill 1437, now provides, "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also authorized, through new section 1172.6, a person convicted (as relevant here)[4] of murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960; *Gentile*, *supra*, 10 Cal.5th at p. 843.) Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, amended section 1172.6 to permit individuals convicted of murder under a "theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition for resentencing. (§ 1172.6, subd. (a).)

Section 1172.6 sets forth the procedure to be followed. The first step is for the petitioner to make a prima facie showing that he is eligible for relief. If he does, the court issues an order to show cause and conducts an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.) In determining whether the petitioner has carried the burden of making the requisite prima facie showing, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) However, "the prima facie inquiry under [section 1172.6] is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment

---

[4] While Young's declaration recites the statutory language applicable to felony-murder cases—"a major participant" who "act[ed] with reckless indifference to human life"—he properly does not contend he was tried or convicted on a felony-murder theory.

regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' . . .  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675.)

The jury instructions are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which may not take place until after an order to show cause issues.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, abrogated on other grounds in *Lewis*, *supra*, 11 Cal.5th 952; cf. *People v. Estrada* (2022) 77 Cal.App.5th 941, 946 [jury instructions showed trial court never instructed the jury on the natural and probable consequences doctrine; summary denial of petition affirmed].)

As we noted, the trial court here instructed the jury with the basic jury instruction for direct aiding and abetting, CALJIC No. 3.01.  No instruction on the natural and probable consequences doctrine appears in the record, nor does Young suggest the jury was instructed on any target offense.  By convicting Young of first degree murder, the jury found, beyond a reasonable doubt, that (at a minimum)[5] Young "aid[ed],

_____

[5]     The panel's opinion in Young's direct appeal noted, "[T]he fact the jury found the firearm use enhancement not true does not mean the jury found Young could not have been the one who

7

promote[d], encourage[d] or instigate[d]" the commission of Lawson's murder "with knowledge of the unlawful purpose of the perpetrator" and "with the intent or purpose of committing, encouraging, or facilitating the commission of the crime." (See CALJIC No. 3.01.)[6]

Accordingly, Young is ineligible for resentencing under section 1172.6 as a matter of law. (*People v. Estrada, supra,* 77 Cal.App.5th at pp. 943-944, 945-946 [affirming denial of petition without issuing order to show cause because petitioner didn't meet his prima facie burden; jury not instructed on natural and probable consequences doctrine; "[t]he record establishes that

---

shot Lawson." The panel continued, "[Young] had an excellent motive for killing Lawson, who not only cooperated with police after Young robbed him in 1987, some 15 months before the shooting, but even testified at the preliminary hearing, after which Young pled guilty. Two witnesses identified Young as being one of the three assailants. Although a third witness, Hodges, did not identify Young, her description of a light-skinned man wearing a bomber jacket was consistent with the description of Young given by [witnesses 1 and 2]. The only issue was whether Young was the man who held his hand at his waist as though he were hiding something when fleeing the crime scene. While [witness 2]'s testimony on this point was equivocal, [witness 1] unequivocally testified he saw the light-skinned man holding his left hand at his waist and his right hand over his left hand. It could reasonably be inferred this conduct was intended [to] conceal a gun. [Witness 1] identified this man as Young."

[6] Nor does anything in the record even suggest that Young was prosecuted or convicted on a theory of imputed malice. A person can be convicted as a direct aider and abettor without there being any possibility of his being convicted under a doctrine of imputed malice. (See *Gentile, supra,* 10 Cal.5th at p. 844.)

8

[petitioner] was convicted of first degree murder as an aider and abettor with intent to kill, and he is therefore ineligible for resentencing under section [1172.6]"]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166-1167 [defendant convicted of murder as aider and abettor was not entitled to relief as a matter of law]; cf. *Gentile, supra,* 10 Cal.5th at pp. 844-845 [person who directly aids and abets a murder possesses malice aforethought].)

We have independently reviewed the record and find no arguable issues. We are satisfied that Young's counsel has fully complied with her responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende, supra,* 25 Cal.3d at p. 441.)

## DISPOSITION

We affirm the superior court's order denying Eugene Young's petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

RICHARDSON (ANNE K.), J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.